## THOMAS *et al. v.* MILLEDGEVILLE RAILWAY CO.

1. The charter of a railroad company which authorizes it to "lay out, build, construct, equip and operate a dummy railroad or roads to and from the respective depots of the railroads in the city of Milledgeville and the village of Midway, and between those and the village of Midway, the Georgia Lunatic Asylum, and such other points and places as said corporation may hereafter decide," will, without reference to the powers which may be implied from the use of the general words at the end of the clause above quoted, authorize the construction by such company of lines of railroad between the designated points in the city of Milledgeville and the village of Midway, or from such a point on the line of either of such roads as it may see proper to select, either to the Lunatic Asylum, or to the village of Midway, or both; and the exercise of an election to construct a railroad from the city of Milledgeville to the Lunatic Asylum does not so far exhaust the charter power as to prevent a subsequent construction from a given point on such road of a new line to the village of Midway, and thence to the State Lunatic Asylum. The village of Midway and the Lunatic Asylum are, by the terms of the power thus granted, recognized as separate objective *termini*, and the construction of a railroad to one does not deprive the company of authority, under its charter, to construct a railroad to the other.

2. Where a railroad company was duly chartered and organized, and its property, as well as its corporate franchises, were afterwards legally sold under a deed of trust, either the purchasers at such sale, or their successors or assigns, without reference to their number, and without the giving of any notice to any person whomsoever, had, under the act approved December 17th, 1892, power lawfully to organize a corporation for the operation of the corporate franchises so acquired, by merely filing a petition for that purpose with the secretary of State. That act did not require the petition to be verified, and under it no certificate of incorporation was necessary. It is otherwise, as to these two particulars, since the passage of the act approved December 15th, 1894.

Argued October 19,—Decided November 16, 1896. LUMPKIN, Justice, being disqualified, did not preside.

Petition for injunction. Before Judge Hart. Baldwin county. October 1, 1896.

Morris and Mrs. Thomas, suing as citizens of Baldwin county, and as individuals interested in the matters herein-

after set out, by their petition against the Milledgeville Railway Company alleged: Defendant, exercising the rights and powers of a corporation chartered by the State, is a street and suburban railroad extending from the depots of the two railroads in Milledgeville, along the streets of that city and about one mile beyond its southern limits to the State Lunatic Asylum which is located in the unincorporated community sometimes called Midway. Said property is now owned by Samuel and W. W. Lumpkin and C. L. Glessner, and operated by them under a certificate issued by the secretary of State, February 14, 1896, purporting to be a charter, and issued pursuant to the laws of Georgia, whereby the aforesaid corporate name was granted to them, together with certain powers set out in the certificate. On December 24, 1888, the General Assembly granted a charter to the Milledgeville & Asylum Dummy Railroad Company, with power to "build, construct, equip and operate a dummy railroad or roads to and from the respective depots of the railroads in the city of Milledgeville and the village of Midway, and between those and the village of Midway, the Georgia Lunatic Asylum and such other points and places as said corporation may hereafter decide." Said last named corporation, pursuant to its charter, located and constructed its line from the depots of both the railroads in Milledgeville, upon the public streets of that city, to the southern limits of the city and thence for about a mile further, along a private way known as Asylum avenue, to the State Asylum. This was done in 1888, and continually since that time the business of said company and its successors, the old Capitol Railroad Co. and the Milledgeville Railway Co., has been conducted on the same line of railroad, there having been in all that time practically no change in the line whatever. On May 30, 1893, all the property, rights, privileges, etc., of the Milledgeville & Asylum Dummy R. R. Co. were sold by trustees under a deed of trust covering said prop-

erty given to secure an issue of bonds, default in payment of which had been made. At this sale W. T. Conn and others became the purchasers. On June 26, 1893, Conn and others privately sold to Samuel and W. W. Lumpkin all the property, rights, etc., "guaranteed" by them at the sale of May 30, 1893. On June 27, 1893, Samuel Lumpkin, his wife Kate, William Lumpkin, Annie C. Lumpkin, wife of W. W. Lumpkin, and Henry B. Johnson petitioned the secretary of State for articles of incorporation, for themselves and such others as they might associate with them, under the name of the Old Capitol Railway Company. Copy of this petition is attached. On the first Tuesday in February, 1896, the Old Capitol Ry. Co., with all its property, rights, etc., was sold at public outcry by the receiver under order of the superior court of Baldwin county, at which sale Samuel Lumpkin became the purchaser. On February 4, 1896, Samuel and W. W. Lumpkin and C. L. Glessner petitioned the secretary of State for a certificate of incorporation under the name of the Milledgeville Railway Company, praying that they be substituted for the original petitioners and stockholders of the Old Capitol Ry. Co., with all the charter powers and authority of said Old Capitol Ry. Co. Copy of this petition is attached. No notice of their intention to apply for a charter was given in any public gazette as provided by law, by the persons applying for a certificate of incorporation under the name of the Old Capitol Ry. Co., nor to those applying under the name of the Milledgeville Ry. Co. In each application less than ten persons (the least number that can be legally incorporated) petitioned for and had granted to them certificates of incorporation. The affidavit of the truth of the allegations of the petition for incorporation, signed by three of the petitioners, was in neither of the cases attached to said petition. Compliance with the requirements above set out is a condition precedent to issuing a legal certificate of in-

corporation of a railroad company under the laws of Georgia, and the Milledgeville Railway Co. is not a corporation for the purposes and with the power hereinafter set out, which it is now undertaking to exercise, although it may be a corporation *de facto*. When the petition for certificate of incorporation was filed by Samuel Lumpkin and others for a charter under the name of the Old Capitol Ry. Co., no certificate of incorporation was issued by the secretary of State, the authority in such cases provided by the law of Georgia. By the exhibits hereto attached the validity of the charter of defendant depends on the validity of that of the Old Capitol Ry. Co.; and the latter was not legally incorporated, for the reasons above set out. The line of road now owned and operated by defendant has been operated by it and its predecessors since 1888 upon the route it now occupies. Defendant now proposes and is engaged in proceeding, as in such cases provided by law, to condemn the private property of petitioners, for the purpose of changing entirely the route for about one half the entire length of the road, that is, from a point near the southern limits of Milledgeville known as the "Double Branches" to the State Lunatic Asylum, about one mile. This new route is far to the right of the present route. The intended change is not demanded by any public or private interest, and is not desired by those over whose property it runs, or those who reside on or near the proposed line, but will result to their inconvenience and damage. Defendant has not the power under the law to change this route, having heretofore exercised the charter authority conferred by the legislature and located its route thereunder; and defendant has not the power to exercise the high privilege of appropriating private property for private purposes, inasmuch as its alleged charter power was not obtained in accordance with the law of this State as hereinbefore set out. In the contemplated new route from the Double Branches to the Lunatic Asylum, defendant

proposes and intends to appropriate and use for its line not less than 300 feet of the public highway known as the Milledgeville and Scottsboro public road. For such occupancy of the public highway defendant has no authority of law. Its use and occupancy of said highway will to all intents and purposes destroy the highway and prevent travel over that part so appropriated. The county authorities have not given their permission to said appropriation, and the same will seriously inconvenience and annoy the travelling public. As citizens petitioners deny the right to use and occupy said highway for the purposes aforesaid without authority granted by some legal authority. Said proposed new line is projected and intended to be constructed, for a distance of 1,000 feet, upon a private way leading from the asylum to the Milledgeville and Scottsboro public road. Several of petitioners own and reside on land adjacent thereto and have no other means of ingress and egress except over and along said way. Said way is narrow, not exceeding twenty-five feet. Its occupancy by said railway will be almost a complete appropriation of it, and will necessitate an abandonment thereof by petitioners and others who are entitled to the free and unobstructed use thereof. Defendant has no authority of law to obstruct and appropriate said way. For these reasons petitioners allege that defendant has no legal authority for condemning their private property for the purposes stated, nor for changing the line of its road; and pray for injunction to prevent it from so doing.

From the petition of Samuel and W. W. Lumpkin, their wives and Henry B. Johnson, appear the following allegations, in brief: The General Assembly in December, 1888, chartered the Milledgeville & Asylum Dummy R. R. Co., with authority to borrow money, issue bonds and secure the same by deed of trust. The company issued bonds and secured them by deed of trust. Under this deed, default having been made in payment of the interest, the

trustees therein named, after full compliance with the terms of the deed, on May 30, 1893, lawfully sold and conveyed all the property, rights, etc., of said company to W. T. Conn *et al.* On June 26, 1893, said purchasers sold and conveyed to Samuel and W. W. Lumpkin all of said property, rights, etc., said Samuel and W. W. in said contract binding themselves to convey all of said property, rights, etc., "to the corporation now about to be hereby formed." Said Samuel and W. W. have associated with themselves Henry B. Johnson, Mrs. Annie C. Lumpkin and Mrs. Kate Lumpkin, in order to form for themselves and such others as may hereafter be associated with them, and their successors and assigns, a corporation under the laws of Georgia for the purpose of owning, maintaining and operating the railroad of said company. They desire to exercise and enjoy the same rights, privileges, etc., by said trust deed enumerated and conveyed, which belonged to and were enjoyed by the Milledgeville & Asylum Dummy R. R. Company, as fully and in all respects as said company, its shareholders, etc., might or could have done had not the aforesaid sales and purchases taken place. Accordingly, for the purposes aforesaid and for the purpose of organizing anew, they now file this their petition and certificate, and request to be substituted for the original incorporators and stockholders of said company, with all their powers, rights, etc. The petition then specified the name of the new corporation, where its principal office would be, the number and term of directors, its capital stock, etc.; and prayed that the undersigned for themselves, associates and successors be a body corporate by the name stated, with all the rights, powers, etc., set forth in the charter of the Milledgeville & Asylum Dummy R. R. Co., or to which they may be entitled under any statute applicable, now of force or that may hereafter be enacted, and that a duly certified copy thereof may be their charter for all the purposes aforesaid. This petition was signed by the five persons

therein named as subscribers thereto, was filed and recorded in the office of the secretary of State on June 29, 1893. Accompanying the same appears the certificate of the secretary of State of the same date, that it is a true and correct copy of the petition and certificate of said petitioners, asking for a charter for "Old Capitol Railway Company," incorporated by the General Assembly of the State of Georgia on December 24, 1888, under the name of "Milledgeville & Asylum Dummy Railroad Company," sold under a deed of trust on May 30, 1893, in Milledgeville, Ga., said petition and certificate being now of file and record in the office of the secretary of State.

By the petition of Samuel and W. W. Lumpkin and C. L. Glessner the following appears: On December 30, 1895, in a case stated, a lawful order was passed directing the receiver of the Old Capitol Railway Co. to make sale at a time named of all the property, rights, etc., of said railway company. After full compliance with the requirements of this order, and in conformity therewith, the receiver sold all of said property, rights, etc., to Samuel Lumpkin. Afterwards this sale was duly confirmed, and the receiver conveyed to said Lumpkin all of said property, rights, etc., and he thus became the sole owner of all the estate of the Old Capitol Railway Co., which was itself the legal successor of the Milledgeville & Asylum Dummy R. R. Co., and as such successor the owner of all its rights, privileges, etc., under its charter. Said Lumpkin has associated with himself W. W. Lumpkin and C. L. Glessner, for the purpose of organizing a corporation under the laws of Georgia to maintain and operate said railway, and they pray that they, their associates and successors, may be substituted for the original petitioners and stockholders of the Old Capitol Ry. Co., with all their powers, rights, etc., and also with all the powers, rights, etc., conferred upon railroad corporations by the statutes of Georgia. The petition then set forth the name of the company, and stated: "whose

railroad will be the same as that of its predecessor, the Old Capitol Railway Co., with the right to acquire, build and complete extensions and branches as authorized by law." Also, the term for which the charter was desired, capital stock, principal office, number and term of directors, etc. Petitioners prayed for a certificate incorporating them and all persons who should thereafter become stockholders in said company, and conferring upon them all the powers, privileges and franchises to which they are legally entitled. This petition was signed by Samuel and W. W. Lumpkin and C. L. Glessner, and was sworn to by Samuel Lumpkin. The certificate of the secretary of State was granted under the act of December 17, 1892, and the amendatory act of December 15, 1894.

Plaintiffs waived the filing of an answer by defendant, and the parties agreed that the case might be heard and determined upon the following agreed statement of facts, except that the question whether or not any railroad has ever been built to or from the village of Midway is left over for evidence; that plaintiffs reserve the right also to offer evidence in support of their allegations that the intended change of route was not demanded by any public or private interest, and is not desired by the people over whose property it runs or the people who reside on or near the proposed line, and will result to their inconvenience and damage; and that defendant reserves the right to make the question that such evidence is illegal, irrelevant and immaterial, and to meet the same by counter-evidence. The Milledgeville & Asylum Dummy R. R. Co. was incorporated December 24, 1888. Acts 1888, pp. 146-8. Under the charter the company built, equipped and operated a line of railroad from the depot of the Georgia and Central Railroads in the city of Milledgeville to the Lunatic Asylum. The defendant contends that this company did not build a railroad to the village of Midway and from that village to the Lunatic Asylum. Plaintiffs contend that the Lunatic Asylum is

in the village of Midway.    This company issued bonds and
secured their payment by a mortgage or deed of trust cover-
ing all its property, rights, privileges and franchises, and
containing a power of sale.    It having made default in pay-
ing the interest due upon said bonds, the power of sale was
lawfully exercised, and the trustees named in said deed of
trust, after complying with all its requirements, legally ad-
vertised and sold all of the property, rights, privileges and
franchises of said company to W. T. Conn *et al.*, on the 3d
of May, 1893, and said trustees duly conveyed to these
purchasers the property, rights and franchises and privi-
leges aforesaid.    On the 26th of June, 1893, these pur-
chasers sold and conveyed all said property, rights, privi-
leges and franchises to Samuel Lumpkin and William W.
Lumpkin.    These two associated with themselves Henry
B. Johnson, Annie C. Lumpkin and Kate Lumpkin; and
these five, as assignees of the original purchasers, on the
29th day of June, 1893, presented to the secretary of
State a petition, a correct copy of which and of a certificate
thereto attached by the secretary of State is attached to the
petition in this case.    The defendant contends that the
petition so filed with the secretary of State and the certifi-
cate signed by him constituted a valid and lawful charter
for the Old Capitol Railway Company.    If it did, said
company acquired and succeeded to all property, rights,
privileges and franchises of the Milledgeville & Asylum
Dummy Railroad Co., unless it be true in law that said
petition to the secretary of State and his said certificate
did not constitute a legal charter, or unless the same were
invalid because the company was composed of five per-
sons only, or because these five persons gave no public no-
tice of their intention to apply for such certificate.    What-
ever effect, if any, these facts may have upon the question
of the legality of the alleged charter of the Old Capitol
Railway Company is for determination by the courts; de-
fendant reserving the right to insist that in any event the

Old Capitol Railway Company was a *de facto* corporation and as such entitled to whatever legal rights it may have in the premises. The Old Capitol Railway Company held, used and owned the property, rights, privileges and franchises of the Milledgeville & Asylum Dummy Railroad Company, if it could lawfully do so under the facts stated, and operated the line of railroad the latter had constructed. It built no additional lines except to make a change in the line running to the Georgia depot, removing that line from certain streets and rebuilding it in others. The Old Capitol Railway Company issued bonds and secured them by a mortgage or deed of trust covering all of its property, rights, privileges and franchises. It made default in paying the interest due on said bonds, and became largely indebted to the Georgia Railroad Company. Upon an equitable petition filed by the Georgia Railroad Company and others, the property, rights, privileges and franchises of the company last named were placed in the hands of Thomas K. Scott as receiver, and under a decree duly and lawfully rendered by the superior court of Baldwin county, he as such receiver, on the first Tuesday in February, 1896, lawfully sold to Samuel Lumpkin all the property, rights, privileges and franchises of the said Old Capitol Railway Company. Said sale was duly confirmed and a conveyance of said property, rights, privileges and franchises duly and lawfully made to Samuel Lumpkin by said receiver on the 13th of February, 1896. He associated with himself as purchaser W. W. Lumpkin and C. L. Glessner, and these three on the 14th of February, 1896, presented to the secretary of State and obtained from him a certificate incorporating themselves, their associates and successors, as the Milledgeville Railway Company. The last named petition and certificate are correctly copied as an exhibit to the petition in this case. Samuel Lumpkin conveyed to this company all that he had acquired by the purchase of said receiver. Defendant contends that the certificate last

aforesaid constitutes a valid and lawful charter for the company last named.    If it did, said company acquired all the property, rights, privileges and franchises of the Milledgeville & Asylum Dummy Railroad Co., and of the Old Capitol Railway Company, as the legal successors of both these companies, and now holds and owns the same, unless said alleged charter is to any extent invalid, because issued to three persons only, or because these three persons gave no public notice of their intention to apply for said certificate. Whatever effect, if any, these facts may have upon the question of legality of the said Milledgeville Railway Company is for determination by the court.    The three incorporators last named are the present board of directors of the Milledgeville Railway Company.    This company, as far as it can lawfully do so, now holds, uses and enjoys the property, rights, privileges and franchises of the preceding companies, and other property it has since acquired, and is operating the line of railroad as aforesaid.    It has built no additional railroad or railroads, but contemplates and intends, if it can lawfully do so, building a new railroad from a point on its present line to the Lunatic Asylum, said point being at and beginning at Double Branches and from that point to the village of Midway, and thence to said asylum.    It has taken the proper corporate action to condemn the lands of the plaintiffs and others for this purpose, and will proceed with its condemnation proceedings according to law unless enjoined.    Defendant contends that neither this company nor either of the predecessors has ever built a railroad from any point to the village of Midway nor from that village to any other point; plaintiffs contend otherwise.    It is not the purpose or intention of said company to take any portion of any public road in the county of Baldwin, without first obtaining the full consent of the lawfully constituted authority of said county so to do.    The defendant expects to obtain such consent, but has not yet done so; nor does the defendant expect or intend to take any property

of any description, whether lands owned by private persons, or private ways, without acquiring the right to do so, by donation, purchase or condemnation according to law.

At the hearing plaintiffs introduced evidence to the following effect: Affiants are citizens of Baldwin county, residing near or in the unincorporated community known as Midway, near Milledgeville. The village of Midway has no definite metes and bounds, and the State Lunatic Asylum is understood by them and regarded as a part of Midway. The proposed change of route is but a change of route to the asylum, and is not demanded by any public or private interest. There is no sort of manufacturing or industrial enterprise, public or private, on or near the proposed line, and nothing of the kind in prospect or contemplated. No interest public or private will be promoted by the change, and it would prove a source of inconvenience and damage. Defendant submitted affidavit of Allen: He owns valuable property and lives in the village of Midway. Is anxious that the proposed route be constructed. Public and private interest demand it. Has known the location of Midway several years, and from his knowledge of its location and that of the asylum, and the general understanding of the inhabitants, says that the asylum is not located in that village, and that the dummy line as now located does not touch the village at any point. Attaches two copies of plat and survey of the village. Midway has about five hundred inhabitants.—Also, affidavit of Lamar: Is steward of the asylum. Inmates, employees and families number about 3,000. Freight on goods for the institution is $15,-000 per annum. Nearly all the goods are received in carload lots, all of which defendant transports. Freight on coal is about $12,000 per annum. Safe and prompt delivery of these goods is of vast importance. Was born and reared in Midway and knows its location. The asylum is located on a tract of 3,000 acres of land owned by the State. From his own knowledge he says the asylum is not

in Midway and it does not form any part of the village. Midway is a separate community and the dummy does not now run through any part of the village.—Also, the affidavits of others, to an effect similar to that of the latter portion of Lamar's affidavit, as to the respective locations of Midway and the asylum, and as to the dummy line not passing through Midway.—Also, affidavit of Robert Whitfield: Midway has never been incorporated, but is located about half a mile from the asylum. The present line of defendant does not touch Midway, as he understands. In the legislature of 1888 he introduced bill to incorporate the Milledgeville & Asylum Dummy R. R. Co., and it was then understood and considered that Midway was separate from the asylum. The Central R. R. has a depot in Midway known as Midway depot. There is no line of road by the dummy from Milledgeville to Midway, nor from there to the asylum or any other point.—Also, affidavit of Samuel Lumpkin: Is chairman of defendant's board of directors, and has full knowledge of its affairs. In building the proposed new line it is endeavoring to exercise its franchise to build a railroad to the village of Midway as it understands it, and from that village to the asylum. In this it was largely influenced by the assured prospect of increasing its business and revenues by getting the patronage of the people in and near said village.—Also, the affidavit of T. O. Powell, superintendent of the asylum, similar to that of Lamar. Further, that the general public considers the asylum as separate and apart from the village of Midway; and that at one time a post-office was established at the asylum by the government. A map showing the route of the propsed change was in evidence, and also a map showing the old plat of the village of Midway.

Injunction was denied, and plaintiffs excepted.

*Roberts & Pottle,* for plaintiffs.
*Whitfield & Allen,* for defendant.

ATKINSON, Justice.

The facts are sufficiently stated in the official report.

1. The principal question in this case turns upon whether or not the railway company, under the terms of its charter which conferred upon it the power "to lay out, build, construct, equip and operate a dummy railroad or roads to and from the respective depots of the railroads in the city of Milledgeville and the village of Midway, and between those and the village of Midway, the Georgia Lunatic Asylum, and such other points and places as said corporation may hereafter decide," had the power, under its legislative grant of authority, to construct the railroad now contemplated, the building of which was sought to be enjoined in the present case. The question of public utility, which seems to have been made in the record and argued here, is answered by the proposition, that where the General Assembly authorizes the construction of railroads in express terms between designated termini, it passes upon the question of public necessity; and when it has decided that the interest of the public require the construction of such a line of road, the courts are not authorized, upon the bare evidence of some persons who may be interested, that in their opinion the public necessity does not require it, to set at naught the will of the General Assembly directly expressed. Upon the question of public policy involved, the General Assembly is the exclusive judge. It will only be necessary then to inquire whether the contemplated act was *ultra vires*, and upon a careful study of the terms of the grant of power, we conclude that it was within the competency of the railroad company to construct the line of railroad projected. Aside from the grant of power contained in the general words, "and such other points and places as said corporation may hereafter decide," under its charter the railroad company was authorized directly to construct a line of road over the projected route. Its purpose was to connect the city of Milledgeville with the vil-

lage of Midway, and to place the Lunatic Asylum in direct communication with each.    The construction of the proposed line of railway accomplishes this purpose.    We do not think that the mere construction of a line of railway connecting the city of Milledgeville with the Lunatic Asylum exhausted the grant of power conferred by the charter.    The village of Midway, the Lunatic Asylum and the several railway depots in the city of Milledgeville and in the village of Midway are each recognized as separate objective termini, and the construction of a railroad between two of such termini cannot exhaust the power conferred by the charter to construct lines of railway connecting the other designated termini.

2  It was urged that the defendant in this case could not exercise the corporate powers conferred upon the Milledgeville & Asylum Dummy Railroad Company by the act incorporating that company, for the reason that, having failed to comply with the statute authorizing the reorganization of railroad companies which had been sold either at private or judicial sale, it did not succeed to the corporate franchises conferred upon the original railroad company.    It appears that in the charter of the Milledgeville & Asylum Dummy Railroad Company, that corporation had authority to borrow money, issue bonds, and secure the same by a deed of trust.    This was done, and default having been made in the payment of the interest upon the bonds issued, the trustees named in the trust deed, after compliance with the terms of the deed, on May 30th, 1893, sold and conveyed all the property, rights etc. of the company to W. T. Conn and others.    On June 26th, 1893, these purchasers in turn sold and conveyed to Samuel and W. W. Lumpkin all of that property.    Samuel and W. W. Lumpkin and others, in order to form for themselves, and such others as might be thereafter associated with them, a corporation under the laws of Georgia, for the purpose of maintaining and operating the railroad purchased by them,

filed with the Secretary of State an application for the purpose of organizing anew, and accordingly obtained a charter for the Old Capitol Railway Company. Afterwards in a suit instituted against the Old Capitol Railway Company, its railroad properties were placed in the hands of a receiver, and they, together with the franchises of the company, were duly sold, at which sale Samuel Lumpkin became the purchaser. This purchaser associated with himself W. W. Lumpkin and C. L. Glessner, for the purpose of organizing a corporation under the laws of Georgia to maintain and operate the railroad, and they filed a petition that they be incorporated under the name of the Milledgeville Railway Company, with the right to acquire, build and complete extensions and branches, as authorized by law. Upon this application a certificate of incorporation was issued by the secretary of State, granting to the Milledgeville Railway Company the powers prayed for by the applicants. This certificate was granted under the act of December 17th, 1892, as amended by the act of December 15th, 1894. It was objected that the charter powers of the Milledgeville & Asylum Dummy Railroad Company did not pass to the Old Capitol Railway Company, because that corporation was not organized in compliance with law, the objection being that no application was filed by the requisite number of persons, under section 2 of the act of 1892. It will be seen from the record, that the Old Capitol Railway Company did not seek to have itself incorporated as an original railway company, but the corporators, to whom that certificate was granted, were purchasers of the corporate rights of the Milledgeville & Asylum Dummy Railroad Company, and were simply seeking to organize anew under the franchises conferred upon the Milledgeville & Asylum Dummy Railroad Company. By the act of 1892, section 9, par. 2, "Such purchaser or purchasers, their associates, successors or assigns, may proceed to organize anew by filing a petition to the secretary of State.

with a request therein to be substituted for the original petitioners and stockholders, with all their powers, rights, privileges and duties and liabilities under this act." The act does not confine the grant of the powers here authorized to be conferred to the application of any given number of persons, but expressly authorizes the purchasers, without regard to number, under the terms of this act, to reorganize. Under the act of 1892 no verification of the petition was necessary, nor was it essential that any certificate of incorporation should be issued. Under that act the organization of the Old Capitol Railway Company as a corporation for the operation of the franchises of the Milledgeville & Asylum Dummy Railroad Company was legally complete merely upon the filing of a petition for that purpose with the secretary of State. When the Milledgeville Railway Company was organized, the act of 1894 was in effect, and its terms were complied with. The petition was verified, and a certificate of incorporation was issued by the secretary of State. This petition having been granted according to the express provisions of the act, the petitioners took the charter powers conferred upon the original corporation, and therefore in their new corporate capacity, under the name of the Milledgeville Railway Company, succeeded to the charter powers originally conferred, and consequently have competent authority to construct the railroad projected.

We conclude, therefore, that the court committed no error in refusing the injunction, and the judgment is accordingly                                                    *Affirmed.*